# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO A. RUBIO,<br><br>   Plaintiff,<br><br>   v.<br><br>SCRIBNER, et. al.,<br><br>   Defendants.<br>_____/ | CV F   04 6139 OWW SMS P<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND (Doc. 1 )<br><br>ORDER DIRECTING CLERK OF COURT TO SEND PLAINTIFF BLANK CIVIL RIGHTS FORM |

Sergio Rubio ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the instant action on August 20, 2004, naming V. Yamamoto, Chief Deputy Warden, Correctional Counselor Schrednitz, C. C. Monroe, R. Roper, A.R. Perez, D.T. Hawkes, and M. Hodges-Wilkins as Defendants.

**A. SCREENING STANDARD**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

**B. SUMMARY OF COMPLAINT**

Plaintiff alleges that on April 4, 2002, his cell was searched and a sheet of paper containing names and addresses of family and friends was confiscated by Defendant Perez. Defendant Perez then authored a confidential chrono stating that Plaintiff was identified as associating/communicating with validated members/associates of the Mexican Mafia Prison Gang. During the month of November, Plaintiff states he was summoned to report to "work change" by Defendant Perez and Correctional Guard Lunes. Plaintiff was instructed to strip nude and was photographed. When Plaintiff asked why he was being photographed, he was informed that it was for preparation of a gang validation packet. Plaintiff then inquired into the basis of why such a packet was being prepared and was informed that this would be addressed by the Law Enforcement Liaison Unit (LIEU). Plaintiff states that he then inquired as to whether he would get a disciplinary write up or hearing prior to his being validated and the response was no, Plaintiff would have to use the inmate appeals process after being validated.

Plaintiff states that on January 31, 2003, he was arrested by Defendants Monroe and R. Roper and was escorted to the Administrative Segregation Unit. No information was provided to him other than the CDC 114-D lock up order. Two weeks later, Plaintiff appeared before a

classification committee and asked why he was in segregation.  He was informed that his placement was based on a finding by Defendants A.R. Perez and D.T. Hawkes that Plaintiff was a gang associate.  Plaintiff was also informed that the hearing took place in Sacramento on January 7, 2003, and that any questions related to his validation should be addressed to the LIEU.  Plaintiff was then transferred to the Security Housing Unit.

On April 23, 2003, Plaintiff made another appearance before the classification committee in the SHU and was notified that all inmates validated as gang associates were held in the SHU per departmental policy.  When Plaintiff asked the basis of his validation, Defendant Yamamoto reviewed his file and informed him that there were three pieces of evidence relied on for the finding and that any inquiries relating to the reliability of the documents should be addressed to the LIEU.  Plaintiff states he was then given copies of documents disclosing the items relied on.

On April 29,2003, Plaintiff appealed the decision to validate him as a gang associate challenging the reliability of the documentation relied on for the validation.  The appeal was denied on June 13, 2003, by Defendant Roper.

On June 28, 2003, Plaintiff appealed the response which was denied on September 23, 2003, by Defendant C.E. Monroe.  Plaintiff submitted an appeal of this decision on October 10, 2003.  Plaintiff's appeal was denied on January 12, 2004, by Defendant V. Yamamoto.

Plaintiff appealed again on February 8, 2004, challenging the reliability of the evidence used to validate him as a gang member/associate.   His appeal was denied on April 8, 2004.

Plaintiff states he has remained in the SHU since the initial determination of his status as a gang member and has gone before an Institutional Classification Committee ("ICC") every sixth months but has been unsuccessful in discussing the basis of his validation.

Plaintiff alleges a violation of Due Process on the grounds that the evidence used to validate him is unreliable and unsubstantiated, and that he was denied procedural protections of notice, review, disclosure of information and the opportunity to be heard at the gang validation hearing.

**C. CLAIMS FOR RELIEF**

*1. Linkage Requirement*

1   The Civil Rights Act under which this action was filed provides:

2   > Every person who, under color of [state law] . . . subjects, or causes
3   > to be subjected, any citizen of the United States . . . to the
    > deprivation of any rights, privileges, or immunities secured by the
    > Constitution . . . shall be liable to the party injured in an action at
4   > law, suit in equity, or other proper proceeding for redress.

5   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

6   the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

7   Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

8   (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

9   constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

10  in another's affirmative acts or omits to perform an act which he is legally required to do that

11  causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th

12  Cir. 1978).  In order to state a claim for relief under section 1983, the plaintiff must link each

13  named defendant with some affirmative act or omission that demonstrates a violation of

14  plaintiff's federal rights.

15      In this case, although Plaintiff provides in narrative form, the names of various

16  Defendants and the events surrounding what he believes to constitute a violation of due process,

17  Plaintiff does not link any of the named Defendants to an act or omission giving rise to the

18  alleged violation of Due Process.   For example, Plaintiff lists an unspecified number of Does as

19  Defendants but does not state anywhere in the Complaint what each Defendant Doe did, on

20  which date to constitute a constitutional violation.  Similarly, with respect to the remaining

21  Defendants, Plaintiff merely names some of them in the narrative describing the events which

22  Plaintiff believes constitute a violation of due process.  However, even as to the narrative, the

23  Complaint is unclear which actions or omissions give rise to the constitutional violation.   The

24  Court will not read the story provided by Plaintiff and determine which circumstances might rise

25  to the level of a constitutional violation.  It is Plaintiff's responsibility to identify each Defendant

26  and the act committed by them, on a specific date and how that act or omission constitutes a

27  violation.  The Court will grant Plaintiff the opportunity to submit an Amended Complaint curing

28  the linkage deficiency.

### *2. Due Process*

Interest that are procedurally protected by the Due Process Clause may arise from the Due Process Clause itself and the laws of the states. Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2 532 (1976.)   The Ninth Circuit has held that the hardship associated with administrative segregation is not so severe as to violate Due Process. See Toussaint v. McCarthy, 801 F.2d. 1080, 1091-91 (9th Cir. 1986). However, changes in the conditions of confinement may amount to a deprivation of a state-created and constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance" and where the restraint "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 477, 484-87, 115 S.Ct. 2293 (1995).   The placement of an inmate in the Segregated Housing Unit ("SHU") indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of Sandin. See Wilkinson v. Austin, -- U.S. --, 125 S.Ct. 2384, 2394-95 , 162 L.Ed.2d. 174 (2005).

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that they hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994); Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir.1986), *cert. denied*, 481 U.S. 1069 (1987); Wilkinson, 125 S.Ct. at 2397 (determining prisoner constitutionally entitled only to informal, non-adversary procedures prior to assignment to "Supermax" facility). However, inmates are not entitled to the full progeny of the due process protections; in this context, due process requires some notice of the charges against him and a meaningful opportunity to present his views to the critical decisionmakers. See Mathews v. Eldridge, 424 U.S. 319, 333 (91976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (*citations and internal quotation marks omitted*); Madrid v. Gomez, 889 F.Supp. 1146, 1277 (N.D. Cal. 1995).

5

## C. CONCLUSION

The Court finds that Plaintiff's complaint does not contain any claims upon which relief can be granted under § 1983 against any of the Defendants. The Court will provide Plaintiff with time to file a first Amended Complaint curing the deficiencies identified above should he wish to do so.

Plaintiff must demonstrate in the Amended Complaint how the conditions complained of resulted in a deprivation of his constitutional rights. See, Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The Amended Complaint must specifically state how each Defendant is involved. Further, there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423, U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is advised that Local Rule 15-220 requires that an Amended Complaint be complete in itself without reference to any prior pleading. As a general rule, an Amended Complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an Amended Complaint is filed, the original Complaint no longer serves any function in the case. Therefore, in an Amended Complaint, as in an original Complaint, each claim and the involvement of each defendant must be sufficiently alleged. The Amended Complaint should be clearly and boldly titled "AMENDED COMPLAINT," reference the appropriate case number, and be an original signed under penalty of perjury.

## C. ORDER

The Court HEREBY ORDERS:

1. The Clerk of Court is DIRECTED to SEND Plaintiff a blank civil rights complaint form;
2. The Amended Complaint is DISMISSED with leave to amend. WITHIN THIRTY (30) days from the date of service of this order, Plaintiff SHALL:
   a. File an Amended Complaint curing the deficiencies identified by the Court in this Order, or

        b.     Notify the Court in writing that he does not wish to file an Amended Complaint and pursue the action but instead wishes to voluntary dismiss the case.

Plaintiff is forewarned that his failure to comply with this Order may result in a Recommendation that the Complaint be dismissed pursuant to Local Rule 11-110.

IT IS SO ORDERED.

**Dated:** **March 9, 2006**　　　　　　　　　　　／s/ **Sandra M. Snyder**
b6edp0　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE